UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-21507-CIV-ALTONAGA/Goodman

**NABIL HACH AL LUCH**,

    Plaintiff,
v.

**SCOTTSDALE INSURANCE COMPANY**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Scottsdale Insurance Company's Motion for Judgment as a Matter of Law (JNOV) or, in the Alternative, Motion to Amend Judgment ("Defendant's Motion") [ECF No. 146], filed April 6, 2018; and Plaintiff, Nabil Hach Al Luch's Motion to Correct Jury Verdict and Judgment ("Plaintiff's Motion") [ECF No. 152], filed April 25, 2018. Plaintiff filed a Response ("Plaintiff's Response") [ECF No. 154] to Defendant's Motion, to which Defendant filed a Reply ("Defendant's Reply") [ECF No. 156]. Defendant also filed a Response ("Defendant's Response") [ECF No. 155] to Plaintiff's Motion, to which Plaintiff filed a Reply ("Plaintiff's Reply") [ECF No. 157]. The Court has carefully considered the parties' submissions, the record, and applicable law.

## I. BACKGROUND

This matter arises out of an insurance Policy (*see* Ex. J-1 [ECF No. 140-1] 2–38) issued by Defendant to Plaintiff, providing property damage coverage for Plaintiff's restaurant. The Court assumes the reader's knowledge of the intricate facts as discussed in prior Orders (*see, e.g.*, February 16, 2018 Order [ECF No. 105]), but provides a brief background for the purpose

of this Order.

On the evening of Friday, April 15, 2016, water began pouring from the ceiling into Plaintiff's restaurant, damaging the building, its air conditioning unit, and Plaintiff's audio equipment, and forcing Plaintiff to discontinue the dinner service and close his restaurant for the night. (*See* February 16, 2018 Order 2 (citations omitted)).

The Policy states Scottsdale will pay for "direct physical loss of or damage to [Plaintiff's property] . . . caused by or resulting from any Covered Cause of loss." (Policy 8[1] (alterations added)). "Covered Causes of Loss" are defined as "direct physical loss unless the loss is excluded or limited" in the Policy. (*Id.* 26). In a section entitled "Limitations," the Policy states

> 1. [Scottsdale] will not pay for loss of or damage to property, as described and limited in this section. In addition, [Scottsdale] will not pay for any loss that is a consequence of loss or damage as described and limited in this section.
>
> . . .
>
>> c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>>
>>> (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . . .

(*Id.* 31 (alterations added)).[2]

In a section entitled "Exclusions," the Policy further states:

> [Scottsdale] will not pay for loss or damage caused by or resulting from . . . . Collapse, including . . . (1) An abrupt falling down or caving in; (2) Loss of structural integrity . . . or . . . (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] The parties frequently referred to this provision at trial as the "Rainwater Limitation" or "Rainwater Exclusion."

(*Id.* 28–29 (alterations added)). The Policy then clarifies "[t]his exclusion . . . does not apply . . . [t]o collapse caused by . . . [w]eight of rain that collects on a roof." (*Id.* 29 (alterations added)).

Plaintiff submitted to Defendant a claim under the Policy for the damage caused by the water intrusion. (*See* February 16, 2018 Order 4). On September 14, 2016, Defendant informed Plaintiff it would not be providing coverage for Plaintiff's loss because Defendant had determined the causes of the loss to be interior rainwater damage due to wear and tear, deterioration, and cracking of the roof surface; all of which Defendant believed were excluded from coverage under the Policy. (*See id.* 4–5).

On March 8, 2017, Plaintiff filed his Complaint (*see* [ECF No. 1-3] 4–14) in state court asserting breach of contract for Defendant's failure to pay under the Policy.[3] Defendant removed the case on April 21, 2017. (*See* Notice of Removal [ECF No. 1]).

On January 5, 2018, both parties moved for summary judgment. (*See* Defendant's Motion for Summary Judgment [ECF No. 72]; *see also* Plaintiff's Motion for Summary Judgment [ECF No. 76]). On February 16, 2018, the Court entered its Order denying the Motions for Summary Judgment, finding there was a triable issue of fact "as to whether the Rainwater Limitation c[ould] apply." (February 16, 2018 Order 25 (alteration added)).

On March 8, 2018, Defendant filed a Motion *in Limine* [ECF No. 123] seeking to preclude Plaintiff from presenting evidence of a collapse as a basis for coverage. After hearing from both parties in open court, the Court denied the Motion *in Limine*. (*See* March 8, 2018 Order [ECF No. 124]).

The case proceeded to a six-day trial (*see* Paperless Minute Entries [ECF Nos. 125, 127, 129, 131–33]) that began on March 8, 2018 and concluded on March 15, 2018. At the close of

---

[3] The Complaint also includes a cause of action under Section 624.155, Florida Statutes, and a cause of action for declaratory relief. (*See generally* Compl.). These counts were dismissed in a May 16, 2017 Order [ECF No. 19].

Plaintiff's case-in-chief, Defendant moved for a directed verdict, and the Court denied Defendant's motion except to the extent it sought to limit certain damages sought by Plaintiff.[4] After Defendant rested its own case-in-chief, it renewed its motion for direct verdict, and the Court once again denied the motion.[5]

On March 15, 2018, the jury returned a Verdict [ECF No. 136] with the following findings: (1) Plaintiff proved by a preponderance of the evidence the building suffered a direct physical loss or damage during the Policy period; (2) Defendant did not prove by a preponderance of the evidence the building damage resulted from a cause of loss that is excluded or limited; (3) Plaintiff's covered building damage was $2,900.00; (4) Plaintiff proved by a preponderance of the evidence he suffered direct physical loss or damage to business personal property during the Policy period; (5) Scottsdale did not prove by a preponderance of the evidence the business personal property damage resulted from a cause of loss that is excluded or limited; and (6) Plaintiff's covered business personal property damage was $55,111.51, a figure reached by adding a base amount of $45,926.25 with 10 percent overhead and 10 percent profit. (*See generally* Verdict). Once the verdict was announced, the Court asked counsel for both Plaintiff and Defendant if there were any errors or omissions in the filling out of the verdict form. Neither party identified any. That same day, the Court entered a Final Judgment [ECF No. 137] in favor of Plaintiff and against Defendant for $58,011.51 in compensatory damages. (*See* Final Judgment ¶ 1).

Defendant now brings its Motion pursuant to Federal Rules of Civil Procedure 50 and 59, requesting the Court enter judgment as a matter of law in its favor and remit the jury award to

---

[4] Plaintiff also moved for directed verdict after its own case-in-chief. The Court denied Plaintiff's motion.

[5] At this point, Plaintiff renewed his own motion for directed verdict, which the Court again denied.

zero (*see* Def.'s Mot. 1–3, 6–10); or, in the alternative, reduce the Judgment to conform with the Policy's $25,000 limit for business personal property coverage and apply the Policy's $1,000.00 deductible (*see id.* 3–5). Plaintiff brings his own Motion under Federal Rule of Civil Procedure 60(a), requesting the Court correct the Verdict and Judgment to reflect the $55,111.51 awarded for business personal property damages was actually intended by the jury to reflect Plaintiff's building damages; and the $2,900.00 in "building" damages was actually meant to be allocated toward Plaintiff's business personal property damages. (*See generally* Pl.'s Mot.).

For the reasons discussed below, the Court finds Defendant is not entitled to judgment as a matter of law, but deficiencies in the Verdict nevertheless warrant a new trial. In awarding a new trial to Defendant, the Court does not reach the issues identified by the parties related to the amount and allocation of damages.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law. "Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration, internal quotation marks, and citation omitted). The court should deny the motion "if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005) (citations omitted). "Although [the court] look[s] at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Campbell v. Rainbow City*, 434 F.3d

1306, 1312 (11th Cir. 2006) (alterations added; internal quotation marks omitted) (quoting *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000)).

In ruling on a renewed motion brought under Rule 50(b), the Court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). Even where a Rule 50(b) motion does not request a new trial in the alternative, the Court retains a "discretionary power" to set aside the verdict and grant a new trial, rather than award a final judgment in the movant's favor. *See Network Publ'ns, Inc. v. Ellis Graphics Corp.*, 959 F.2d 212, 214 (11th Cir. 1992); *see also Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 215–16 (1947) ("[R]ule [50(b)] does not compel a trial judge to enter a judgment notwithstanding the verdict instead of ordering a new trial; it permits him to exercise a discretion to choose between the two alternatives." (alterations added; citation and footnote call number omitted)); *Roberts Tech. Grp., Inc. v. Curwood, Inc.*, No. CV-14-5677, 2016 WL 337753, at *7 (E.D. Pa. Jan. 27, 2016) ("Federal Rule of Civil Procedure 50(b) provides a court may grant a new trial when ruling on a renewed motion. . . . While Curwood did not move for a new trial on damages, it is within our discretion to grant such a remedy if we determine the malady may be cured in a second trial." (alteration added; citation and footnote call number omitted)), *vacated on other grounds*, 695 F. App'x 48 (3d Cir. 2017).

### III. ANALYSIS

Defendant contends it is entitled to judgment as a matter of law because (1) Defendant proved the applicability of the Rainwater Limitation as a matter of law; and (2) Plaintiff did not establish an exception to the Rainwater Limitation applied as a matter of law. (*See generally* Def.'s Mot.).[6]

---

[6] Defendant further argues it is entitled to judgment as a matter of law because the jury was impermissibly permitted to speculate as to the actual cash value for items of damage not repaired by Plaintiff, without a

The jury found Plaintiff proved by a preponderance of the evidence his business personal property and building suffered direct physical loss or damage during the Policy period. (*See* Verdict ¶¶ 1, 5). The jury further concluded Defendant did not meet its burden to prove by a preponderance of the evidence that the building and business personal property damage resulted from a cause of loss that was excluded or limited under the Policy. (*See id.* ¶¶ 2, 6). The jury did not address the question of whether Plaintiff proved by a preponderance of the evidence that any exception to an exclusion or limitation applied. (*See id.* ¶¶ 3, 7). For the jury to have reached a verdict for Defendant in this case, it would have needed to find either: (1) Plaintiff did not show a direct physical loss or damage to his building or business personal property during the Policy period; or (2) Defendant showed an exception or limitation to the Policy applied, *and* Plaintiff did *not* show an exclusion to the pertinent exception or limitation applied.

Defendant does not attack the jury's finding that Plaintiff proved by a preponderance of the evidence Plaintiff's building and business personal property suffered physical loss or damage during the Policy period. (*See generally* Def.'s Mot.). Thus, to be entitled to a verdict in its own favor, Defendant must show "there is no legally sufficient evidentiary basis" for a reasonable jury to return a verdict for Plaintiff, *Chaney*, 483 F.3d at 1227 (internal quotation marks and citation omitted), by demonstrating no reasonable juror would find both: (a) Defendant proved by a preponderance of the evidence an exception or limitation to the Policy applies; and (b) Plaintiff did not prove by a preponderance of the evidence an exclusion to the demonstrated exception or limitation applies.

Defendant has not made the latter showing. Defendant asserts it proved the applicability of the Rainwater Limitation as a matter of law (*see* Def.'s Mot. 6–7), but the Rainwater

---

reasonable basis to do so. (*See* Def.'s Mot. 8–10). As the Court concludes a new trial is warranted, it does not reach the issue of whether the jury improperly guessed at damages in the Verdict.

Limitation contains an exception, stating it does not apply if "[t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters" (Policy 31 (alterations added)). The Policy provides Scottsdale will not generally pay for loss or damage caused by a collapse, but expressly states the exclusion for "collapse" does not apply where the collapse was caused by the "[w]eight of rain that collects on a roof." (*Id.* 29 (alteration added)). Thus, a collapse caused by the weight of water collecting on a roof is not "excluded or limited" in the Policy, and is accordingly a Covered Cause of Loss. (*Id.* 26). It follows that an exception to the Rainwater Limitation can be shown where the building suffers a collapse caused by the weight of rain pooling on its roof, and rain subsequently enters through the damaged roof.

Defendant argues there was "[a] lack of competent testimony from any witness or expert that the building suffered a 'Collapse' as defined in the Policy." (Def.'s Mot. 7 (alteration added)). To the contrary, Plaintiff's expert, Alfredo Brizuela, as well as Plaintiff himself, testified an accumulation of water on the roof caused the roof to sag and eventually give way, resulting in the pooled water pouring into the restaurant. This testimony is consistent with Plaintiff's offered theory that the damage to his restaurant resulted from water penetrating the building through a collapse caused by the weight of water collecting on his roof. The evidence advanced by Plaintiff at trial was sufficient for a reasonable jury to have found water entered the restaurant through an opening created by a "Covered Cause of Loss," and so a reasonable juror could have deduced an exception to the Rainwater Limitation applied. As a result, Defendant is not entitled to a judgment in its own favor as a matter of law.

Nevertheless, Defendant's argument that the jury erred in finding Defendant failed to prove the Rainwater Limitation applied at all — regardless of exception — is well taken. (*See*

8

Def.'s Mot. 6–7; *see also* Verdict ¶¶ 2, 6). The Rainwater Limitation states — subject to certain enumerated exceptions — Scottsdale will not pay for damage to "[t]he interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain. . . ." (Policy 31 (alterations added)). While Plaintiff admits his property suffered "water damage" (Pl.'s Resp. 6), he asserts the jury's decision that the Rainwater Limitation did not apply was nevertheless supported by the evidence because the water pouring into the restaurant was not "rain" (*id.* 7). Instead, according to Plaintiff, "rain is drops of water from the sky," and on the date of loss, "there was no precipitation." (*Id.*). Plaintiff's construction of the term "rain," as used in the Policy, does not withstand scrutiny.

Under Florida law, "interpretation of a contract is generally a question of law." *PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1232 (M.D. Fla. 2012) (citations omitted). "If the contract contains ambiguities, however, a question of fact for the jury may be presented." *Id.* (citations and footnote call number omitted). "The determination of whether the terms of a contract are ambiguous is a question of law." *Id.* (citations and footnote call number omitted). "[T]rue ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley S. Condo. Ass'n, Inc.*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996) (alteration added; citation omitted). "In reviewing a document, a court must consider the document as a whole, rather than attempting to isolate certain portions of it." *Id.* (citations omitted)).

Plaintiff's interpretation of "rain" as used in the Rainwater Limitation is irreconcilable with the language in the Policy stating the "collapse" exception does not apply to a collapse caused by the "[w]eight of rain that collects on a roof." (Policy 29 (alteration added)). This language makes unambiguous "rain" does not cease being "rain" under the Policy merely

because it lands and collects on a roof. Instead, the pooled water on the roof — which the parties offered no evidence resulted from anything other than an accumulation of "drops of water from the sky" (Pl.'s Resp. 7) — remained "rain" per the plain language of the Policy, regardless of whether there was precipitation on the date of loss. The jury's finding (*see* Verdict ¶¶ 2, 6) that Defendant failed to show Plaintiff's damage was "caused by or result[ed] from rain" (Policy 31 (alteration added)), was unreasonable.

Faced with a jury verdict unsupported by the evidence, "the court has discretion to order a new trial rather than grant judgment if it believes that the defect in the proof might be remedied on a second trial." *Network Publ'ns, Inc.*, 959 F.2d at 214. Although Defendant did not request a new trial in its Motion, the Court views a new trial, rather than judgment as a matter of law, as the appropriate remedy here. The jury made an unreasonable finding as to some interrogatories in the special verdict form (*see* Verdict ¶¶ 2, 6), and, as a result, did not reach subsequent questions that a reasonable juror could have answered either way (*see id.* ¶¶ 3, 7). A new trial will ensure the unanswered questions on which this case hinges are answered by a jury.

In deciding a new trial is warranted, the undersigned takes note that both parties have identified purported defects in the Verdict related to the award of damages. Defendant points out the award for $55,111.51 in business personal property damage contravenes the $25,000.00 limit stated in the Policy. (*See* Def.'s Mot. 4). For his part, Plaintiff states "the Jury inadvertently transposed the amount of damages on the Verdict Form by switching the amounts to be awarded to the Plaintiff under the Interrogatories for 'building' and 'business personal property'" (Pl.'s Mot. 1). Although the Court declines to resolve these issues with the Verdict in this Order, the fact that neither party believes the award comports with the evidence submitted to the jury only

underscores the Court's conclusion the Verdict is untenable and a new trial is necessary to prevent injustice.

Last, the Court declines to reach Defendant's argument that the jury improperly speculated as to the actual cash value for damages without having a reasonable factual basis for doing so. (*See* Def.'s Mot. 8–10). Any prejudice suffered by Defendant related to this issue will be properly redressed in a new trial.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion **[ECF No. 146]** is **GRANTED in part** as follows:

1. The Final Judgment [ECF No. 137] is **SET ASIDE**.
2. No later than May 24, 2018, the parties are directed to submit a scheduling report providing dates of availability for trial between June and July, 2018. Upon receipt of the report and entry of an order setting a trial date, the Clerk will be directed to **REOPEN** the case.
3. Pre-trial motions are not permitted.
4. Plaintiff's Motion **[ECF No. 152]** is **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 18th day of May, 2018.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record